Federal Trade Commission, which is Mr. Schroeder And we have Pelusa. Yes. And three minutes has been reserved. Is that correct? That's correct. Please. May it please the court. Kimo Peluso, Church Remark, the LLP, for the defendant appellant, Martin Shkreli. There are three main issues that I would like to address today. First, federal law cannot be used to modify the law of equitable monetary damages and award a defendant, excuse me, award a plaintiff an equitable monetary remedy that they could not have gotten in state court. Okay, so I was hoping to let you have a little bit more time, but you've jumped right into my first question. So I'm going to say that you would agree that the Donnelly Act, which he was found guilty of, must be construed in light of federal precedent. Is that correct? He was found liable under the Donnelly Act. And the Donnelly Act substantive provisions, yes, must be found. Okay, so then why shouldn't federal jurisprudence be considered when fashioning a remedy? Because the equitable monetary remedy awarded in this case was not a remedy that's provided for under the Donnelly Act. It was a disgorgement remedy for which the district court had to look to the New York executive law, which has been around forever and is a general remedial practice. Okay, so your colleagues on the other side, and I am going to ask them about this, have suggested that you were making a different argument before the district court. What would be first your reaction to that? Well, they are right that no one performed an Erie analysis at the district court level. I'm sorry, what did you say again? I missed. Go ahead. I want to be sure I understood your response. No one performed what? An Erie analysis. The plaintiffs, the defendant, the district court, no one conducted an analysis of whether state or federal law should control on the award of a disgorgement remedy, even though everyone understood that this was a state law claim. So it's not unclear that at no point did you or your client's counsel argue that New York equity jurisprudence should apply. Is that assertion accurate? My answer to that is they at no point argued that Erie required the court not to consider federal precedent, but all of the parties and the court were looking at New York law, because you don't get equitable monetary remedies under the FTC Act or under the Sherman Act. In light of recent Supreme Court authorities, you had to look to state law. The defendant's trial counsel never suggested that that was inappropriate. The Harveys and the district court looked at New York state law to conclude that disgorgement should be measured by nationwide excess profits. That is purely a New York state law doctrine. There is no federal counterpart for it. It dramatically expanded the monetary relief the plaintiffs could get here. And Mr. Shkreli's trial counsel never once said, no, state law doesn't apply. You said in your reply brief, and correct me if I'm wrong, that your client admits that he did not raise this argument below. We did not. Trial counsel did not raise the Erie choice of law issue below. But certainly, defendant preserved the claim that is before this court that disgorgement could not be awarded against him without a finding of personally receiving ill-gotten gains. So I want to ask, is this a stopple? Is it forfeiture? Is it waiver? What are the lines between those three are fuzzy? Mr. Shkreli, do you have a position on which one you think this is closest to? Well, our position is none of those are. I have a position about what the plaintiffs are raising in their appellee's brief. I believe they are waiving a- They're arguing. I know they're arguing waiver. They're arguing waiver. Do you think that it's more like forfeiture or a stopple? No, Your Honor. It couldn't be a stopple because the defendant did not prevail on this issue before the district court. The district court rejected the defendant's position on the limits of equitable disgorgement. He was citing federal cases. But the limits that he proffered, the district court rejected. And we are appealing that finding as well. And it can't be a forfeiture because there hasn't been any prejudice to the plaintiffs. And the plaintiffs haven't raised forfeiture as something that precludes him from raising this issue here. The district court squarely in waiver land, which you're arguing you didn't waive because you're arguing it was pregnant amongst the- It was in the soup of what it was that you were arguing even if you didn't specifically argue. Is that right? That's our first point, which I won't change at all. And our second point is that even if there were nominally a waiver here, this court and other courts of appeals have routinely considered, sometimes to a sponte, errors by the district court on matters of choice of law and in particularly eerie issues because these are purely legal issues and they tend to be very important. The alternative is for this court to rule on New York state disgorgement remedies available under the New York executive law without applying New York law, applying federal principles that can't possibly govern it. And this court shouldn't issue a decision on this remedy under the incorrect law. So even if there were a waiver, the court should apply the correct law, which is New York state law. And in that respect, the limits of equitable disgorgement could not possibly have allowed for the broad joint and several liability that the plaintiffs argue for and that they argue for the district court and that the district court accepted. Disgorgement was chosen as the remedy because the plaintiffs did not want a jury trial in this case. They gave up any pursuit of damages, civil penalties, the brass ring of monetary relief, treble damages. They didn't pursue any of that. They only focused on disgorgement because they wanted to make sure this was a bench trial. That was their right to do that. But the consequence of that is that they chose a remedy that is very limited and can only be based on the gains of the defendant. And the New York Court of Appeals in the J.P. Morgan v. Vigilant case made very clear that the extension of disgorgement into things like joint and several liability that we see in SEC federal cases, that looks very unfamiliar to us. That is not how New York law works. And New York law has been clear on this literally for centuries, that the remedy of disgorgement takes the defendant, looks at their ill-gotten gains from the unlawful conduct, and then puts them in the position they would have been if no wrongful conduct had occurred. Okay. So you, Counselor, have three minutes of rebuttal. I am going to ask that you be ready to talk and answer our questions about the First Amendment. Thank you, Your Honor. I am ready for Mr. Grossman. Good morning, Your Honors. May it please the Court. Brad Grossman for the Federal Trade Commission, joined by Philip Levitz from the State of New York. I'm here to address the injunctive relief, while Mr. Levitz will address the monetary relief and any questions you may have about the injunction as well. Sure. In this appeal, it's undisputed that Martin Shkreli controlled an unlawful scheme to block competing generic drugs so that he could price gouge immunocompromised patients fighting to survive, and that he only tightened his control when going to prison. It's also undisputed that Mr. Shkreli has engaged in similar monopolistic schemes. Can you jump to the New York law on the disgorgement because you've got not too much time. I'm sorry. You're right. You're on the First Amendment. I'm sorry. I'm happy to talk about the First Amendment. No, no, no. Exactly where you want. So virtually every antitrust violation has an expressive component because the participants use speech to collude or carry out their schemes in a market. That is correct, Your Honor. What makes this case unusual is that it's prohibiting virtually any statement about a pharmaceutical company. Why is that warranted? So the injunctive relief that we proposed in paragraph 2D of the order specifically prevents Mr. Shkreli from taking action to influence or control a pharmaceutical company, and that was the proscription that we had proposed. Judge Cote added the statement, and that's a generally applicable standard that applies to speech or conduct. And Mr. Shkreli then raised an objection, and Judge Cote added the language about public statements to protect Mr. Shkreli because Mr. Shkreli's objection was, let's say I make a statement in public. Let's say I make a statement on Twitter or in a blog, and I don't intend it to influence a decision by a pharmaceutical company, but someone might perceive it that way. So you're saying rather than view it expansively, it should be viewed as a limiting factor. It's absolutely a limiting factor. It's a safe harbor. So one of the issues is that his conduct didn't involve influencing pharmaceutical companies through public statements, right? His conduct involved influencing pharmaceutical companies indirectly. But not through public statements, right? Yes. And so you're saying the way that we should not be concerned is because there is a limit to the intent part of it, and that prevents it from being overly broad. That's exactly right, Your Honor. And I'd like to point out that without this provision, Mr. Shkreli could potentially drive a Mack truck through this order. And here's what I mean. Hopefully we can agree that it would be off limits, just as Mr. Shkreli did from his contraband phone. He couldn't text one of his confederates to violate the antitrust laws. He shouldn't be allowed to evade the order by picking up the very same phone and using his Twitter or ex account or whatever they call it to convey the very same directions, but just turning his privacy settings off. And then that would fall within the province of a public statement. And the purpose of this order and the purpose of Judge Coates' qualifying language is to say this proscription applies to public and private statements alike. And you should not be able to evade the law just because you utter a command to control a pharmaceutical company in a public setting. Another example of a public setting in this case, one of the more colorful events occurred in a Starbucks parking lot. Mr. Shkreli should not be allowed to evade the restrictions of this order simply because he commands a person in a public setting to violate the law. Okay, if I can ask another question. Usually in cases we have upheld a lifetime ban, there used to be the repeat offenders. And this was the first time he was found to violate an antitrust case at least. So why are they similar? It's the first time he's been adjudicated liable. But the factor that really matters, for example, in this case, the court's decision in carcer, is the fact that the violations were systematic. And that's not disputed on appeal. It's not disputed on appeal. What do you mean systematic? Systematic meaning that he committed similar violations to deprive patients of generic drugs over and over again in connection with three different drugs. And he does not appeal in this case that that conduct was unlawful and unjustified. Remind me, what was he incarcerated for? He was incarcerated for securities fraud, Your Honor. And I'd also like to point out that Mr. Shkreli, in a decision by Judge Matsumoto, actually permanently banned him from participation in the securities industry and took judicial notice of Mr. Shkreli's conduct while incarcerated, and then used that as one of the reasons why he's likely to reoffend in that case. If he's likely to reoffend in that case, which didn't even, you know, that was an unrelated violation, he certainly has shown a propensity to reoffend in this case. But when Judge Cope weighed all the factors, the systematic nature of the violations was one thing. But she was also entitled to consider scienter here. And it's a different type of scienter than what you normally see in an antitrust case, because it's not just that Mr. Shkreli violated the law intentionally. It's also that we have an undisputed factual finding by Judge Cope that he showed reckless indifference to the health and safety of the most vulnerable members of society. That's a huge factor that goes here. It's the repeated nature of the conduct, the recidivism, and also Judge Cope went the extra mile. She not only considered all of these public equities. She also considered the private equities, which you don't necessarily see in all of these lifetime ban cases, and frankly, it's rare. But she went out of her way to look at Mr. Shkreli's background, and she saw this is an individual who has no training or experience in this industry apart from the unlawful scheme. It would not deprive him of the opportunity to pursue a career for which he trained as an individual with a business degree. So Judge Cope weighed the public equities, weighed the private equities, and decided that the risk is simply too great for this individual who has spent his entire career evading restrictions, his entire career in the pharmaceutical industry targeting the most vulnerable individuals, and Judge Cope weighed all of those factors. What about the fact that the other defendants only got 10 years? Well, two distinctions, Your Honor. First of all, the other defendants settled, and Mr. Shkreli chose to go to trial. So you think that that suggests a need to prevent backtracking or intrenchment? It does, but also Mr. Shkreli spearheaded all of this. So it's both role and a sense of recognition. His pervasive control, and not only that, Mr. Shkreli in this case denied responsibility for every part of the scheme. He said below, and again, my colleagues have not appealed this, he denied accountability for everything because he didn't sign the documents. Judge Cope looked at that and decided, when you have a defendant who denies responsibility for everything because he didn't formally sign the documents, that counts as in favor of extremely broad, equitable relief. And that goes back to the First Amendment point. If Mr. Shkreli is only prohibited from formally participating in a business decision, what's he going to say in the next case? I didn't formally participate in the business decision. And that's the need for 2B. So if there are no further questions, we would ask the Court to affirm. Thank you, Mr. Levitz. Thank you, Your Honor. My name is Philip Levitz for the State Appellees. I'm going to need you to speak up. I'm sorry. So he says we can't ignore Erie, even though they did. What is your response to that? I don't think that's true. You can forfeit a choice of law argument, absolutely. There's lots of precedent for that. And Your Honor was getting at me. And so you would use the word, you would say that it was forfeited, not waived. I think it was both. You can use either word. And you can also call it a stoppel, because they argued something to the district court, and now they're arguing the opposite. So it's multiple of those things. And the brief specifically referred to forfeiture, our brief. In any event, as the district court's undisputed factual findings following a lengthy trial made clear, this is a quintessential case for joint and several disgorgement under either state law or federal law. Shkreli was the single mastermind of his anti-conspiracy. I'm sorry. I'm having a hard time hearing you. I'm sorry. If you could focus on why, if we disagree with you, that we can ignore Erie. Yeah. And what falls from that, why you think you still prevail. Yeah, absolutely. Because the New York law is the same as the federal law here, and there's been no showing otherwise. So New York equity jurisprudence is consistent with the federal equity jurisprudence in giving courts broad discretion to order disgorgement, including on a joint and several basis where co-defendants engage in concerted wrongdoing. It's the concerted wrongdoing that's the critical component in the case law generally, both in federal law and in state law. And New York courts have long held co-defendants who engaged in concerted wrongdoing jointly and severally liable to return the ill-gotten profits. So, for instance, that goes back over 100 years in New York law. We cite the Bosworth v. Allen case from the New York Court of Appeals, the Asphalt Construction case from the First Department, the Pollix case from the First Department. Those are old cases that make exactly the same point we're making here, which is that you can have the equitable remedy of an equitable monetary remedy ordered on a joint and several basis when you have two concerted wrongdoers. Here we have more than a concerted wrongdoer. We have what the district court found in undisputed findings to be the mastermind of this scheme, who drove it every step of the way, who controlled the company completely, who was the largest shareholder, who was all of these things being held on a joint and several basis. And that, again, is exactly the quintessential case to do that. New York courts have expressly rejected Shkreli's argument that the disgorgement remedy is personal and can be imposed only on the actual recipient of the full illicit benefit to be disgorged. That's the 212 Investment Corp. case that we cite. And Shkreli completely misconstrued his dicta from the J.P. Morgan case. That case does not remotely suggest, much less hold, that joint and several disgorgement is unavailable against co-defendants engaged in concerted wrongdoing under New York equity jurisprudence. The court in J.P. Morgan simply suggested that requiring disgorgement of profits earned exclusively by innocent third parties, not named as defendants, might not be appropriate. That's not what we have here. We have this classic concerted wrongdoing situation. But I think he's – maybe I'm misunderstanding your colleague on the other side, but this is like an important point for us. I think you're making the argument that the court can impose joint and several liability. He, as I understand it, is making the argument that in this case the court cannot, and it was error to do so. So either explain to me why I'm misunderstanding that argument or explain to me why that position is wrong. I'm sorry. I'm not sure I followed Your Honor's question. Okay. I understand you're opposing counsel to say that it's not simply a New York law permits a equitable distribution in this case that might allow for joint or several liability in this case. He is saying that one cannot in this case. Like this is the kind of situation where he didn't have the kind of involvement that the other cases do that permit a court to do this. I may be misunderstanding him, but either explain to me why I'm wrong or explain to me why that position is wrong. Because this is exactly the kind of factual situation where courts have ordered the joint and several disgorgement. Shkreli, again, was the mastermind of the scheme. He drove it each step of the way. It's undisputed that the scheme generated 64.6 million in wrongful excess profits for him and for Bayard, the company through which he executed the scheme. So the cases here, both in New York and in federal law, say when you're simply a concerted wrongdoer with your company or with another individual defendant, you can be held jointly and severally liable for disgorgement. At an absolute bare minimum, he's a concerted wrongdoer because, you know, he was with the company. But he was more than that. He was running this whole scheme. He was running the company that engaged in the unlawful conduct. So I hope that's responsive to Your Honor's question, but if it's not. And so I think your argument is that there is a distinction between co-defendants, for want of a better word, co-actors, co-conspirators, who all together are responsible. And here you add to that the fact that Mr. Shkreli is allegedly the leader. So it's just Shkreli and his company, as opposed to that JPMorgan and some of those other cases were dealing with truly third parties. Not just other parties, but removed third parties. Right. They were innocent. It was talking about like tipper-tippee cases, where the tippee didn't even know what was going on, was completely innocent. That's not at all the situation we have here. And that's the contrast that was drawn in the first – I'm sorry, in the JPMorgan case. It's the same contrast, by the way, that was drawn by the U.S. Supreme Court in the Lew case. I mean, we're clearly on the side of it where that joint and several liability has always been permitted, which is this concerted wrongdoer situation. It's, again, the quintessential case of that. And if I could just make one other point. Okay. This is your last point. I'm sorry. Yes. I just wanted to underscore Your Honor's point about the Donnelly Act. You know, the Donnelly Act – the fact that this is a Donnelly Act claim just underscores that it's totally appropriate for this court to look to federal law in interpreting that act because the New York Court of Appeals has repeatedly said that. That the Donnelly Act claim should be construed in light of federal law, in light of the Sherman Act jurisprudence in both the Sherman Act and the Donnelly Act absolutely permit this sort of disgorgement. Okay. Thank you so much. Thank you, Your Honors. And Mr. Peluso, we kept them up here for a little bit longer, so we'll keep you up as we need you. You've got three minutes on the clock, which will be extended, I'm sure. Thank you, Your Honor. Quickly on the disgorgement issue, the Sherman Act does not allow disgorgement anymore. That's why the federal claims for monetary relief were all dismissed in this case. So by all means, you can adopt that federal law and interpret the Donnelly Act based on that precedent. We wish that New York law were the same, but it's not. But we are faithfully following New York law, which still allows disgorgement. It does not, however, allow disgorgement on a joint and several basis. And let me clarify in response to Your Honor's question to the state plaintiffs. Joint and several liability is not mentioned in connection with a disgorgement profits-based remedy by any New York case other than to say it does not exist. The one case that they cite where those words all appear together is the 212 case that counsel just mentioned, which is a case affirming an arbitration award, not applying New York law. There's much more I can say on this, but I'll move on to the injunction and the free speech issues now, unless there's any other questions on the remedy. The problems that arise in this case from a free speech First Amendment perspective are very much a symptom of the overbreadth of the injunction. This is not— Can we review the injunction right for abuse of discretion? Correct, Your Honor. So I may not have given so broad an injunction. My colleagues might have seen it otherwise. I see disagreement, but I don't see anything that amounts to abuse of discretion. Your Honor, the abuse of discretion is that the district court, although finding that the defendant engaged in the repeated playbook, specifically with respect to blocking generic development in the context of patent-expired drugs, that that was what the defendant here did over and over again. And in banning him from participating in any way, directly or indirectly, from the entire pharmaceutical industry, which is a small word, but it means a lot of different things, that excludes him from entire sectors of the economy that have almost nothing to do with the narrow field in which the scheme was found to have operated. Right, but you would agree that the abuse of discretion standard allows some play in the joints, right? Like it allows the district court to use their discretion and their up-close familiarity to be able to fashion something to protect the public interest. What I need to hear from you is why or how is this so overbroad that it constitutes an abuse of discretion? Thank you, Your Honor, and the reason it's so overbroad because there were no findings and there couldn't have been no findings that the misdeeds and the wrongs here were transferable to the entire field in which he was being enjoined from participating. She had a particular problem here. She was dealing with a dangerous predicate felon who was unrepentant. And so she was tasked with trying to protect the public from your client. And we all would agree that your client was a major, major threat to the public. And I see I'm out of time, but I'll answer that and any other questions. It's our time, so we'll keep you as long as we need to. So get comfortable. Thank you. Your Honor, that finding does not logically. I mean, should I overstate? By no means, Your Honor. Your client's culpability? Well, I think Your Honor has not overstated Judge Coates' findings as to my client's culpability. But that's really the danger that we see with a remedy this broad. It is not the role of courts to determine which people are dangerous in a general sense and then enjoin them. Of course it is. She has to protect against recidivism. Well, Your Honor, that could support an injunction from all trade and commerce, which I can't imagine this court would affirm. In the cases that are cited by the plaintiffs. Right, but they didn't, right? Doesn't the fact that there's some narrowing in both two ways? One, it's an industry, and two, it is there's like an intent of sorts required about influencing the public. Don't those provide enough of a narrowing to at least be within the abuse of discretion state? I don't think so, Your Honor, because what we're calling an industry here is actually several different industries. And in most of them, the conduct that's alleged here would be impossible to commit. It is very different than the cases that they are citing where they say that this motor company that can't make spark plugs is now banned from an industry. If that's an industry, then the pharmaceutical industry, which is something like 3% of the U.S. economy, is many, many industries. And most of them are totally irrelevant to the scheme that was found here. And there's nothing in the district court's opinion that would tell you that the district court looked at what are the relevant sectors of the economy that I need to focus on. Can't your client come back and say I need an adjustment in the case? I mean, it seems to me there's a safety valve for making sure that something wasn't inadvertently unuseful, right? What role does the safety valve play in all of this? Well, Your Honor, the safety valve here relates to qualified employment, unless Your Honor is referring to the public speech. So you're saying the safety valve is only for the employment? It doesn't factor into the speech? I mean, is there something preventing a request for modification more generally? Well, that's why we're here. No, no, no, no. But before the district court, my understanding was that your client could come in and petition for another modification with a good faith and persuasive reason to do so. Is that not permissive? That is permitted. So why does that – how does that not prevent there from being at least a future possibility of a more narrow territory? Well, we're appealing from this – With a concrete context. Well, we're appealing this injunction because it is sweeping and prospective and it shouldn't be imposed on the defendant to have to come to the court for permission to do conduct that should not be enjoined in the first place. The question is whether this injunction is an abuse of discretion. To me, this seems more like the drawstring on a set of sweatpants. If the sweatpants are too big, you can put them on, but then you can go and you can tighten them or you can loosen them if the weight changes too much. Like, why don't – why doesn't the flexibility and the fact that he can get some relief later give us at least comfort that this was not so outside the court's discretion as to be a problem? I think if we look at this court's decision in Michaelis, that kind of rationale should be entirely out of the question. The court should be imposing an injunction that is narrowly tailored from the outset. In Michaelis, not only did the court overturn portions of the injunction that went towards illegal conduct that had nothing to do with the underlying violation, there's another part of that decision, which I didn't think was relevant here until just now, where the court overturned the appointment of a receiver who could impose additional restraints on the defendants because that was giving too much discretion to this receiver. But we would be backing into the same place if we just told the defendant, okay, you can't leave the house or do anything, but you can still come back and ask permission to do the things you want to do. That rationale would justify any injunction of any breadth. The problem is that that is not how the enormous equitable power of the courts are supposed to be deployed. I think we've got your argument. We will take it under advisement. Thank you. Thank you very much.